**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 11-cr-00184-WYD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  LEON HENDERSON ASKEW,

       Defendant.

**GOVERNMENT'S SENTENCING STATEMENT**

The United States of America, by and through Kurt J. Bohn, Assistant United States Attorney, submits the following post-trial sentencing statement regarding the defendant, reserving its right to file a response to the Presentence Investigation Report pursuant to § 6A1.3(a) of the United States Sentencing Guidelines:

**FACTUAL BACKGROUND**

On April 1, 2011, El Paso County Sheriff Deputy Andy Thompson was patrolling the Days Inn Motel in Colorado Springs. This area is a known area for narcotics trafficking. Deputy Thompson identified a vehicle with expired plates. After learning the room that was associated with the vehicle, Deputy Thompson and several other Deputies made contact with the occupant of that room.

When the Defendant opened the door to the room, Deputy Thompson immediately smelled marijuana. After asking for the Defendant to get his identification card, the Defendant took off and ran from the deputies. The Defendant ran across the Days Inn parking lot, across the street and into the parking lot of the Crowne Plaza Hotel. At that time, Deputy White arrived on the scene and observed the Defendant hiding on the ground, under a vehicle. Deputy White ordered the Defendant out from under the vehicle and took him into custody. Deputy White performed a pat down search of the Defendant and recovered $1,259.00, a room key and other cards, and an empty knife sheath strapped to his waist. Deputies secured the room and obtained a search warrant.

When Deputy Thompson made contact with the Defendant at the room, he observed a female in the room also. The woman was Thea Quintanilla, whose husband left her, had lost her two kids, and started on Methamphetamine at age 25 in 2009. Since then she has been basically homeless and living day by day, place by place. There was another woman in the room by the name of Lacy Sellars. Ms. Sellars had started to use Methamphetamine in 6th grade, at the age of 13. While at times she lived in her mother's house on and off, basically since then she has lived on the street. She also has two kids, and they also are with their father.

On April 1, 2011, Mr. Askew picked the two women up at a 7-11 and took them back to his hotel room to hang out and get high. When Mr. Askew picked the women up

he had his red and black backpack with him. When the party got to the Days Inn, the ladies stood outside and smoked cigarettes while the Defendant walked his dog. Even while the Defendant walked his dog he had his red and black backpack with him. Neither of the two women took narcotics or a firearm to the room.

As the officers ran off in pursuit of Mr. Askew, both of these women took a split second to look at each other and run, quite honestly taking advantage of the failure of one officer to remain behind, ran leaving everything behind. They left everything not on them at the time - including shoes, coats, and bags. They ran away barefoot from the room. They did not take any time to put anything into Mr. Askew's red and black backpack.

Deputies performed a search of the room after they obtained a search warrant. During the search, Deputies found narcotics and drug paraphernalia on the bed next to and in the red and black backpack. When Deputies searched the backpack they found several items that are consistent with drug trafficking - two digital scales, baggies, several different types of narcotics, $1,341.00 in United States currency - folded and separated in easy to use denominations, and in a separate pocket - a Smith & Wesson, .357 caliber revolver, Model 340PD.

Prior to April 1, 2011, the Defendant had possessed the red and black backpack and used it when he trafficked in narcotics. Mr. Askew didn't allow anyone else to get into the backpack. Hayley Womack, a 19 year old girl who started on Methamphetamine

at age 17 had spent a lot of time with the Defendant at the Chief Motel where she saw him with the red and black backpack all the time. She saw him get narcotics out of it. She saw people in and out of the hotel rooms throughout the day and night. Stephanie Ross, who had started using Methamphetamine at age 13. She met Mr. Askew, dated him, cared for him. Ms. Ross and Mr. Askew spent a lot of time together during their brief relationship. And during that time she saw people come and go into the room throughout the day and night. When people came to the room, Mr. Askew would go and get things out of the backpack for them. And on at least one occasion Mr. Askew showed Ms. Ross a firearm.

The firearm the Defendant possessed came from Ian Conner. Mr. Conner, a former soldier in the United States Army, who upon his return from Afghanistan suffered from mental stress and turned to drugs. That drug addiction ended his career. At one point, to pay for his drugs, he sold a Smith & Wesson, .357 caliber revolver, Model 340PD, serial number CMV9659 - the same one in Mr. Askew's backpack - for crack cocaine. One thing that is important, is that Mr. Conner did not sell a box of ammunition to anyone. Mr. Conner sold the firearm to a Mr. Carriger, who in turn sold the firearm to Mr. Askew to pay off a narcotics debt. Mr. Askew stipulated that he has been convicted of a crime punishable by imprisonment by a term exceeding one year - and thus was prohibited from possessing a firearm, that the firearm functioned as designed, the firearm

was manufactured outside the State and District of Colorado, and, consequently, had traveled in interstate commerce before the Defendant possessed it.

Mr. Tim McKibben - a forensic scientist with the Colorado Bureau of Investigation, testified how he tested the powder cocaine and the crack cocaine to determine what the substances are and the amount of them.  Specifically, Mr. McKibben testified that he determined that there was 12.73 grams of crack cocaine and 7.85 grams of powder cocaine, both of which are Schedule II narcotics.  These amounts of narcotics found are distribution amounts and not a personal use amount

Detective Sarkisian - a detective, who conducts real life undercover purchases of firearms and narcotics testified that the items Mr. Askew possessed were tools of the narcotic trafficking business.  Mr. Askew carried or used the firearm during and in relation to his narcotics trafficking.

After hearing all of the evidence in this case, the jury found the Defendant guilty of all fours counts of the Superseding Indictment.  Specifically, he is guilty as charged in:

<u>Count One</u>
18 U.S.C. § 922(g)(1)

On or about April 1, 2011, in the State and District of Colorado, the defendant, LEON HENDERSON ASKEW, having been previously convicted of crimes punishable by imprisonment by a term exceeding one year, did unlawfully and knowingly possess a firearm, to wit: a Smith & Wesson, .357 caliber revolver, Model 340PD, in and affecting

interstate commerce.

The foregoing is in violation of Title 18, United States Code, Section 922(g)(1).

Count Two
21 U.S.C. § 841(a)(1)

On or about April 1, 2011, in the State and District of Colorado, the defendant, LEON HENDERSON ASKEW, did unlawfully, knowingly and intentionally possess with intent to manufacture, distribute, or dispense, or possess with intent to distribute or dispense, approximately **12.73** grams of a mixture and substance purporting to be cocaine base (crack cocaine), which is a controlled substance listed in Schedule II, Title 21, United States Code, Section 812, and the regulations enacted thereunder.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

Count Three
21 U.S.C. § 841(a)(1)

On or about April 1, 2011, in the State and District of Colorado, the defendant, LEON HENDERSON ASKEW, did unlawfully, knowingly and intentionally possess with intent to manufacture, distribute, or dispense, or possess with intent to distribute or dispense, approximately **7.85** grams of a mixture and substance purporting to be cocaine, which is a controlled substance listed in Schedule II, Title 21, United States Code, Section 812, and the regulations enacted thereunder.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

Count Four
18 U.S.C. § 924(c)(1)(A)

On or about April 1, 2011, in the State and District of Colorado, the defendant, LEON HENDERSON ASKEW, did unlawfully and knowingly carry, possess, and use a firearm, during and in relation to a drug trafficking crime, and did knowingly possess the firearm in furtherance of such crime, for which he may be prosecuted in a court of the United States, that is, as described in Counts Two and Three.

All in violation of Title 18, United States Code, Section 924(c)(1)(A).

The Jury answered a Special Interrogatory in the Verdict Form, that they unanimously agreed that the Defendant had possessed his firearm during and in relation to a drug trafficking crime.

**Relevant Conduct** – The evidence established by the testimony was that the firearm was fully loaded and that the Defendant had possessed the firearm while committing another felony offense. The evidence established by the testimony was that the Defendant had eight (8) different narcotics in his possession - each in a distribution quantity. Further, the evidence established by the testimony was that the Defendant had engaged in narcotics trafficking for some period of time prior to his arrest on April 1, 2011.

## SENTENCING FACTORS

The 2011 Edition of the Sentencing Guidelines is applicable in this case.

A.      The offense guideline is § 2K2.1(a)(4)(A), with a base offense level of 20.

B.      There is a 4 level increase in the Specific Offense Characteristics for possession of a firearm in connection with another felony offense.

C.      There is no victim related, role-in-offense obstruction and/or multiple count adjustments.

D.      The adjusted offense level would therefore be 24.

E.      The Defendant does no receive any downward adjustment for acceptance of responsibility under Guideline § 3E1.1, making the total offense level 24.

F.      The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the court. Known facts regarding the criminal history are as follows:

(1) Possession of a Controlled Substance with Intent to Distribute on or about 21 August 2000, in El Paso County District Court, Colorado, case number 2000CR0434. He was sentenced to 4 years confinement. [3 points]

(2) Escape from a Felony Conviction on or about 21 February 2003, in El Paso County District Court, Colorado, case number 2002CR2718. He was sentenced to 4 years confinement. [3 points]

(3) Use of Controlled Substance on or about October 8, 1992, in El Paso County District Court, Colorado, case number 1991CR3573.  He was sentenced to 4 years probation. [1 point]

Known facts regarding the defendant's criminal history suggest he may have 7 criminal history points, putting him in Criminal History Category IV.

G.   Assuming the (tentative) criminal history facts of F. above, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

H.   The guideline range resulting from the estimated offense level of 24, and the (tentative) criminal history category IV, is 77 to 96 months.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level of 24 could conceivably result in a range from 51 months (bottom of Category I) to 125 months (top of Category VI).  The sentence would be limited, in any case, by the statutory maximum.

The United States Sentencing Commission Guideline applicable to Count Four, a violation of 18 U.S.C. § 924(c)(1)(A) is § 2K2.4.  Pursuant to this guideline, the guideline sentence is the term of imprisonment required by statute.  The statute requires a minimum sentence of five years of imprisonment (sixty months) up to life imprisonment consecutive to any other term of imprisonment.

   I.  Pursuant to advisory guideline § 5E1.2, assuming the offense level is 24, the fine range would be $10,000.00 to $100,000.00, plus applicable interest and penalties.

   J.  Pursuant to guideline § 5D1.2, if the Court imposes the term of supervised release, that term cannot be more than three years.

## SENTENCING RECOMMENDATION

  The defendant is a person who not only has chosen to ignore the law, but has chosen to commit serious crimes without regard for the serious consequences that flow from them.  The Defendant's criminal history is quite telling about his nature and character.  He was convicted of the same offense as this matter in August of 2000 in Colorado Springs and was sentenced to 4 years confinement. This prior conviction is significant for two reasons.  First, the Defendant had previously chosen to ignore the law and distribute narcotics.  Mr. Askew's intentions could not be clearer - he will take the path of least resistance when it comes to earning money - he will not work and he does not care about those who are injured by his selling of narcotics. Second, the sentence of four (4) years was not sufficient to dissuade Mr. Askew from his chosen path of crime.

  Mr. Askew's belief that the law and rules do not apply to him is evident from him escaping from the custody of COMCOR in 2003.  To be given the opportunity to leave the confinement of prison, the opportunity to work, and the opportunity to rebuild his life lawfully and then to intentionally chose to turn his back on all of those opportunities is

Mr. Askew's way of telling the legal system that he will do what he wants, when he wants, and no one will tell him differently.  The sentence of four (4) years confinement was a sufficient period of time for the Defendant to reflect on the path that lead him to that point in his life.  A sufficient period of time to impart on him the consequences of violating the law.  Yet this Defendant, in refusing to accept responsibility for his decisions, came out of prison and possessed a dangerous weapon in furtherance of his narcotic trafficking life.  The fact that the Defendant possessed this fully loaded firearm is a reflection of his disregard for the safety of others - just as he put crack cocaine, cocaine, and other narcotics on the streets of Colorado Springs without regard for the consequences of his action.

   Mr. Askew intentionally chose not to learn from his previous conviction and confinement for Distribution of a Controlled Substance.  This Court had the opportunity to see first hand the lasting impact of drug addiction on the numerous witnesses whose lives have been and continue to be devastated by illegal narcotics.  Mr. Askew's decision to ignore the direct consequences of his actions speak loudly about his willingness to endanger society for his own benefit.  His decision to ignore previous rehabilitation efforts and so quickly return to a life of violence and crime indicates a great need to protect society from him.  He cannot come forward now and say that "now" he realizes the err in his way when he has refused to accept responsibility for his actions.  Given that

the Defendant is an unrepentant crack cocaine dealer, the government recommends, for the safety of the community, that the defendant be sentenced at the top of the applicable guideline range for possessing a firearm and narcotics.  Further, the fact that the Defendant possessed a fully loaded firearm, a box of ammunition, and knives in the furtherance of his narcotics trafficking warrants a significant period of confinement for Count 4.  That offense requires a mandatory minimum sentence of 5 years confinement up to life, consecutive to any other sentence imposed by this Court for the conviction of Counts 1, 2, and 3.  In Mr. Askew's case, based on his willingness to return to the same dangerous lifestyle after being convicted of narcotics trafficking before, a sentence of ten (10) years is not only appropriate, it is warranted in this case.  Congress believed that the actions of a person such as Mr. Askew is so serious that it warrants confinement up to the remainder of his life.  A sentence of 10 years for this offense would allow the Defendant to re-enter society at a time in his life that he would no longer be a danger to society.

Dated this 6th day of February, 2012,

                                      Respectfully submitted,

                                      JOHN F. WALSH
                                      United States Attorney


                                      /s/ Kurt J. Bohn
                                      Kurt J. Bohn
                                      Assistant United States Attorney
                                      1225 17th Street, Suite 700
                                      Denver, CO 80202
                                      Telephone: 303-454-0100
                                      Fax: 303-454-0403
                                      Kurt.bohn@usdoj.gov

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 6th day of February, 2012, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

LaFonda Jones
Lafonda_Jones@fd.org

Justine Kozak
justine_kozak@cod.uscourts.gov

                     United States Attorney's Office

14