1          IN THE UNITED STATES DISTRICT COURT
2              FOR THE DISTRICT OF COLORADO

Criminal Action No. 11-cr-00184-WYD
3
UNITED STATES OF AMERICA,
4
     Plaintiff,
5
vs.
6
LEON HENDERSON ASKEW,
7
     Defendant.
8  _____

9
                    REPORTER'S TRANSCRIPT
10                       SENTENCING

11 _____

12         Proceedings before the HONORABLE WILEY Y. DANIEL,
   Judge, United States District Court for the District of
13 Colorado, commencing at 9:11 a.m., on the 8th day of June,
   2012, in Courtroom A1002, United States Courthouse, Denver,
14 Colorado.

15                          **APPEARANCES**

16 For the Government          KURT BOHN, ESQ.
                               MICHAEL CAREY, ESQ.
17                             United States Attorney's Office
                               1255 17th Street
18                             Denver, Colorado

19 For the Defendant           DANIEL T. SMITH, ESQ.
                               1900 Grant Street
20                             Denver, Colorado

21

22         THERESE LINDBLOM, Official Reporter
            901 19th Street, Denver, Colorado 80294
23       Proceedings Reported by Mechanical Stenography
            Transcription Produced via Computer
24

25

1                        P R O C E E D I N G S

2              *THE COURT:*  11-cr-184, U.S.A. v. Askew.

3              Will counsel enter their appearances.

4         *MR. SMITH:*  Good morning, Your Honor.  Kurt Bohn and

5    Michael Carey from the U.S. Attorney's Office on behalf of the

6    United States.

7         *MR. BOHN:*  Good morning, Your Honor.  Dan Smith,

8    court-appointed counsel for Mr. Askew, who joins me at counsel

9    table in custody.

10             *THE COURT:*  Have both sides received and reviewed the

11   presentence investigation in this case, including all addenda?

12   If your answer is yes, indicate that.  Further indicate if you

13   have any objections to the contents of the report including the

14   advisory guideline calculation and the sentencing

15   recommendation of 123 months.

16             *MR. BOHN:*  Your Honor, on behalf of the United States,

17   we've reviewed the documents identified by the Court.  We have

18   no objection to them.  We do agree with the advisory guideline

19   range.  We do intend to ask for a higher sentence than

20   recommended in the latest recommendation, Your Honor.

21             *THE COURT:*  Mr. Smith.

22             *MR. SMITH:*  Your Honor, in answer to the Court's

23   question, I have reviewed the presentence investigation report

24   as best I can.  I am not in a position to advise the Court

25   whether or not I have objections to most of it.

1          *THE COURT:*  Why is that?

2          *MR. SMITH:*  What's that?

3          *THE COURT:*  I said, why is that?

4          *MR. SMITH:*  Your Honor, I don't believe I can answer

5     that question without violating client confidentiality and Rule

6     1.6 of the Code of Professional Responsibility.

7          *THE COURT:*  As you know, earlier this week I entered

8     two orders.  One denied Mr. Smith's motion to withdraw for the

9     reasons noted in the order, and then also I denied the

10    supplemental motion that was filed because I found no merit to

11    the arguments that had been raised, given where we are at this

12    stage of the proceeding.  Meaning, the trial occurred many

13    months ago, the defendant was found guilty, we're in a

14    different phase, and so those things that were noted really

15    were not appropriate to be considered at this time.

16          All right.  Well -- then we'll proceed.

17          Mr. --

18          *MR. SMITH:*  Your Honor, may I request of the Court,

19    Mr. Askew has asked to be allowed to address the Court directly

20    prior to the sentencing hearing.

21          *THE COURT:*  I'm not going to let him do that.  The

22    sentencing hearing will proceed as I normally proceed.  He will

23    have a right of allocution, but not at the beginning.  At the

24    beginning, I want to hear from the Government as to what its

25    position is on sentencing; I'll ask you what you say,

1    Mr. Smith; and then I'll give the defendant a chance to make a

2    statement, which he has the absolute right to do.  Of course, I

3    will let him do that; but it's got to be at the right time.

4         What is your position on all of this, Mr. Bohn?

5         *MR. BOHN:*  Your Honor, initially, when the United

6    States prepared a sentencing statement for the Court's

7    consideration, we asked the Court to impose a sentence of 120

8    months because we had calculated the advisory guideline range

9    under 2K2.1.  The probation office correctly found and

10   determined that the correct analysis was 2D1.1, under the drug

11   tables, which gave us a higher advisory guideline range.

12        And it isn't just that alone that has the United

13   States asking for confinement of a period of 138 months now,

14   Your Honor.  It's several factors, and I'd ask the Court to

15   consider.

16        Very briefly, I know this trial was in January, and

17   the Court has a memory of that.  But let's not forget that this

18   is an individual who, as Detective Sarkisian testified as an

19   expert -- not an expert, but from his undercover experience,

20   had all the tools of drug trafficking.  He didn't just deal in

21   one or two drugs, Your Honor; he had eight different types of

22   narcotics in the room.  He didn't just have brass knuckles or

23   brass knuckles and a knife, he had brass knuckles, a knife, and

24   a gun.  He was an individual who possessed everything he needed

25   to be an individual everyone would come to for their narcotic

1    needs.

2           You know, it's not often, Your Honor, that the United

3    States comes before you and actually wants you to break down

4    and think of the offense on a personal level.  But this court

5    had the opportunity to observe five witnesses who Mr. Askew has

6    not only touched their lives, but touched their lives in an

7    extremely negative way.

8           Ian Conner, Your Honor, was a soldier in the Army,

9    Your Honor.  He served honorably in Afghanistan.  He came back

10   and had problems, and he turned to drugs, drugs to the point

11   where he sold a firearm.  This is a direct impact of the type

12   of influence and impact that a guy like Mr. Askew has in the

13   community.

14          Hayley Womack, Your Honor, 19 years old, started on

15   meth at 17.  Stephanie Ross, started on meth at 13.  Thea

16   Quintanilla, meth at 25.  And Lacy Sellers, meth at 13.  But

17   for the repeat availability of narcotics by Mr. Askew, these

18   are four women whose lives and their children's lives have all

19   been so substantially affected, Your Honor, that it can only be

20   termed tragic.

21          What you have is a need to protect the public from an

22   individual who engages in drug trafficking, an individual, Your

23   Honor, who, as probation says, has not accepted responsibility,

24   but on the recommendation stage talks about the high risk to

25   reoffend.  And why is that?  Because I think, Your Honor, when

1    one looks at the presentence investigation on R-2, it was very

2    telling in this sentence, Your Honor.  This is an individual

3    who has, may I point out, nine convictions, Your Honor, that

4    got zero criminal history points, one of them being a second

5    degree assault conviction.  But this sentence is telling.  His

6    judicial interventions have included deferred sentences,

7    probation, intensive probation, Community Corrections, and

8    prison.  He's previously violated conditions of supervision,

9    which have led to him having his probation revoked.

10        Here is an individual who now sits before you with his

11   fifth felony conviction.  Everything the judicial system can

12   do, every tool that is available in the judicial system has

13   been tried for Mr. Askew.  The State has more in its toolbox

14   available to them than you do.  They have many more options to

15   try to rehabilitate and give hope to a young man who has made

16   bad decisions or maybe didn't have all the advantages of life,

17   although I would dispute that is not the same individual you

18   have here.  The Court has seen so many young men come before it

19   who never had a chance.  This gentleman has a diploma from

20   Widefield High School.  He had an opportunity to move on.  He

21   had some additional schooling.  Everything that was done for

22   this man that could be done was done.

23        And his acceptance of responsibility?  Well, Your

24   Honor, I would ask the Court to turn to page 13 of the

25   presentence investigation, because I think this is why the

1    United States has significantly changed his recommendation.   In

2    paragraph 62, Department of Corrections records reflect the

3    defendant has sustained multiple discipline violations.   This

4    is while in the system.   Disobeying a lawful order nineteen

5    times, advocating facility disruption two times, solicitation

6    of staff, damage to property, unauthorized possession, sexual

7    misconduct, fraud, unauthorized absence, refusal to work, and

8    escape without force.

9         The State has done all they could.   And even when he

10   was confined in a system with other individuals where the rules

11   are as strict as can be, he has shown a total disregard for

12   law, for rehabilitation efforts, for authority.

13        I think it's significant, Your Honor, that in 2000,

14   the defendant was sentenced and convicted of possession with

15   intent to distribute narcotics, and he was sentenced to 4

16   years.   It is telling that he had 4 years for the exact offense

17   he has before you.   And the guideline range that came out of

18   the narcotics offense here, Your Honor, is 63 to 78 months.   So

19   we're talking basically a low end of about a year more is all

20   for an individual that didn't learn the time before.

21        I think, Your Honor, the Court's had the opportunity

22   to observe Mr. Askew's demeanor not only during trial, but also

23   previously the disrespect he's shown the Court himself.   Now,

24   you've indicated to him you don't want to hold that against

25   him.   But I think it's relevant, because it shows a lack of

1    respect for a judicial officer and the judicial system that is

2    coupled with, as paragraph 62 indicates, a long history of

3    disrespect, a long history of failure to accept responsibility.

4         There are not many times that you want to say that an

5    individual has no future and incarceration for the good of the

6    public is the primary purpose of incarceration.  I would

7    suggest that would be this case.  I would suggest that

8    incarceration for as long a time that is reasonable, that it be

9    sufficient but not greater than necessary, with the primary

10   purpose of protecting society should be the Court's guiding

11   light in this matter.

12        The guideline range is 63 to 78 months.  A sentence at

13   the top of the advisory guideline range, 78 months, is what is

14   appropriate here, Your Honor, for the factors and the reasons

15   we've talked about.  Then you add on the -- a minimum of 60

16   months for the violation of the 924(c), and you get to a total

17   of 138 months.  That alone, Your Honor, is giving him clemency.

18   That alone is giving him a chance.  It would not be

19   unreasonable if this Court said a high end or above guideline

20   sentence plus something above 5 years confinement, 7, 8, 10

21   years under the 924(c) alone.  But 5 years, 60 months,

22   confinement for the 924(c) with a top-of-the-guideline

23   calculation would be appropriate.

24        This PSIR, Your Honor, is uncontroverted by Mr. Askew.

25   He's had months, he's submitted numerous documents to you

1    without any guidance from attorneys, without any guidance from

2    counsel.  He's made their lives -- as you can tell from the

3    comments of my co-counsel here, the inability to respond and

4    say anything.  So you could deem the facts here uncontroverted.

5    And I would suggest those facts in this PSI report warrant a

6    sentence of confinement of a combined total, Your Honor, of 138

7    months.

8         THE COURT:  Before I hear from Mr. Smith and then give

9    the defendant a chance to make a statement, Ms. Kozak, anything

10   you want to say on the record on behalf of probation?

11        PROBATION OFFICER:  Your Honor, in regards to

12   recommendation, I'm going to stand by the 123 months, only to

13   the fact that, unfortunately, Mr. Askew refused to talk to me

14   during the presentence investigation, so I don't know a whole

15   lot about his upbringing and childhood.  With the 123 months, I

16   used -- not having knowledge of what he experienced as a child

17   to recommend a low end.

18        I understand the Government's concerns, and I have

19   those same concerns.  I do still think he is a risk to the

20   community.  But whether it's 123 or 138 months, I think

21   somewhere in that range is appropriate, Your Honor.

22        THE COURT:  Fair enough.

23        Mr. Smith, what would you like to say?

24        MR. SMITH:  May I have one moment, Your Honor?

25        THE COURT:  Yes.

1        MR. SMITH:  Thank you, Your Honor.

2        Your Honor, since I was appointed in this case, I have

3   had the opportunity to speak with prior counsel, and I've had

4   the opportunity to speak with Ms. Kozak.

5        In doing that, I have searched high and low for

6   information to go over this presentence report and attempt to

7   either verify or question some of its contents.  I believe I

8   have enough information to advise the Court, I do not object to

9   the Government's offense conduct statement.

10        THE COURT:  Hold on one second.

11        Is there anything else you want to say, Mr. Smith?

12        MR. SMITH:  I reviewed the advisory guideline

13   calculation.  And certainly, as to the criminal history of my

14   client, I was able to review the documentation that Ms. Kozak

15   had.  I have been able to talk to prior counsel in two of the

16   state cases, and I believe the criminal history computation is

17   correct.

18        Having said that, I am in the same position that

19   Ms. Kozak is.  And I don't believe I can address this Court as

20   to the appropriateness of any sentence without more background.

21   And as such, I would only offer a response to comments of

22   Government counsel.

23        I appreciate that there are victims of the sale of

24   methamphetamine, but I don't believe that's unique to this

25   case.  I think that's a factor in any controlled substance

1  prosecution.  There are always addict victims, and I don't

2  believe that would take this case out of the heartland of

3  cases.

4          I have nothing else that I can say, Your Honor.

5          THE COURT:  All right.

6          Mr. Askew, this is your opportunity as the defendant

7  in the criminal sentencing proceeding to make a statement to

8  the Court.  So if you want to make a statement, go to the

9  microphone and do it at this time.

10          THE DEFENDANT:  Good morning, Your Honor.

11          There is a couple of things here that is really out of

12  proportion at this time.

13          You stated earlier that you was going to give me an

14  opportunity to speak.  And I'm going to have to put in a couple

15  of things that's -- I feel is jeopardizing my sentence.  So

16  have patience with me, because it's all boiling down to why I

17  believe that this sentencing phase is biased towards me.

18          Prosecutor Bohn allowed officers to get on the witness

19  stand and give perjured testimonies.  Officers lied about how

20  many officers knocked on the door on April 1.  Prosecutor Bohn

21  should have known that there were only two officers at the

22  door, one being Officer Thompson and another being a female

23  cadet.  The female cadet was never called.  Violation of *Brady*.

24  She could testify that officers perjured themselves saying that

25  they were at the door, when in fact they were not.  In

1    violation of 18 U.S.C. subsection 1623(a), Mr. Bohn allowed

2    these officers to commit perjury so that they could cover up

3    that evidence was planted and tampered with.

4         The Government cannot knowingly use perjured testimony

5    to obtain a guilty verdict.  See *U.S. v. Rangel*, Tenth Circuit

6    2008.  Therefore, the Indictment is to be dismissed.  If there

7    is any reasonable likelihood that the Government relied on

8    obtaining -- relied on perjury to obtain a guilt verdict,

9    reversal is required.  *United States v. Crockett*.  This was the

10   Government's substance in chief of case.  Therefore, the guilty

11   verdict is to be reversed as not guilty on all counts, the

12   sentencing hearing is to be vacated, and I am to be let free

13   immediately.

14        Chief Judge Wiley Daniels, you have violated this most

15   important rule and committed misconduct.  For judicial

16   misconduct, page 3, lines 31, 32, 36, 37, 41, 44, 45, 46, 51,

17   52, 53 and 54, for judicial conduct and judicial disability

18   proceedings.  H, misconduct is conduct prejudice to a defect in

19   expeditious administration of the business of the courts.

20   Misconduct includes but not limited to having improper

21   discussions with parties or counsel for one side in a case,

22   treating litigants or attorneys in a demonstrating -- in a

23   demeaning or hostile manner and violating other specific

24   standards of judicial conduct.  It's conduct outside the

25   performance of official duties, and the conduct might have the

1  prejudice on an effect of administration of the business of the

2  courts, including substantial and widespreading lowering of the

3  public confidence and the courts among reasonable people.

4       What you did on 4/2/12 was just that.  And you are

5  going to be directly responsible for the marshals for being

6  sued.  If the decision in this ruling is alleged to be a result

7  of improper motive, accepting a bribe.

8       Rule 43, defendant's presence, waive and continuing

9  presence.  Waiver effect.  If the defendant waives the right to

10 be present at the trial to proceed to completion, including

11 verdicts, return, sentencing during the defendant's absence.

12 You violated Rule 43, defendant presence, (c)(2) waiver, when

13 on 4/2/12 defendant wasn't present in the court for sentencing.

14 Defendant objected to the sentence of Chief Judge Wiley T.

15 Daniels, would not be here defendant motion for -- would not

16 hear defendant's motion for ineffective assistance of counsel.

17 Defendant requested to be removed from the courtroom.

18      Chief Judge Wiley Daniels, you ordered the U.S.

19 Marshals to pick me up off the floor and physically restrain me

20 in the chair, when the defendant got down on the floor and I

21 was already in a submitted position.

22      Daniels, you then ordered the marshal to take me back

23 to the holding cell after the defendant would not let you speak

24 because I kept saying, "I object to these proceedings, and I

25 waive my right to be present.  Take me back to the holding

cell."  After being placed in the holding cell, the marshals

returned back within about 10 minutes to the holding cell with

full restraints and stated that Daniels wanted them to put full

restraints on me, including a muzzle.  Marshals then ordered

defendant back to the back of the holding cell and performed an

extraction on the defendant by telling the defendant to get

down on the ground, placed full restraints on the defendant

while at taser point.  Marshals then picked the defendant up

off the ground by his arms and legs and carried me out to your

courtroom, while the defendant continued to object by stating,

"I do not want to be present."  The marshal says, This is the

order of Daniels.  We have to take you back into the courtroom.

Marshals then asked if there is any way that we could just have

an intercom system to no avail.

Marshals then carried me back to the courtroom,

hog-tied, placed me on the chair, and tied me down to the chair

with full restraints.  Defendant says, "I object to this as

violating my due process and constitutional rights."

Daniels, you entered the courtroom, and I continued to

object, and stated you will hear counsel's motion to withdraw

and reschedule the hearing, when I asked you to hear for

ineffective assistance prior to that.  U.S. attorney nor public

defender did nothing to object what was going on.  All they did

was just laugh.

In violation of professional conduct, a courtroom of

professional misconduct and professional responsibility by

lawyers.   Daniels, you have continued to show bias and judicial

abuse, harassment, abuse of process, gross misconduct,

outrageous conduct, and negligence in violation of the code of

judicial conduct and professional responsibility by lawyers by

striking every motion that the defendant submitted, alleging

ineffective assistance of counsel, and while the allegations of

ineffective assistance of counsel is pending, you still strike

the motions, allowing fraud to be placed on this court with

clear and convincing evidence that this has been brought to

your attention numerous times and refusing to address the

issues in any way or manner, turning a blind eye and deaf ears,

forcing me to have an attorney that you handpicked yourself

from the CJA pool, Docket No. sheet 85, not being able to make

professional choices or maintain professional conduct by

yelling out loud, "I am the judge," as if you are God.   Abusing

a process by allowing the prosecution to place perjured

witnesses, police officers, on the witness stand and continuing

to subornation of perjury, allowing the prosecution to enter

fraudulent affidavits and evidence in the court proceeding,

stating on the record that every question the prosecution was

misleading, but I won't tell you, Ms. La Fonda Jones, how to

try a case and allowing La Fonda to continue to try the case,

and not letting me file ineffective assistance of counsel

motions, when accountability of La Fonda's actions was

1   ineffective.

2          Refusing to have hearings that prove any and all of my

3   allegations.  Not reporting any attorney misconduct to

4   appropriate agencies.  Not putting sanctions on the U.S.

5   attorneys for misconduct and allowing the prosecution for

6   violation of Brady.  And not looking beyond the face of motions

7   filed by the defendant, because the federal courts have

8   obligation to look beyond the face of motions filed by pro se

9   inmates, again, showing bias and prejudice.

10          Daniels, you have not recused yourself, when you know

11   this warrants reassignment.  You continue to cover up this

12   misconduct and criminal behavior by sending this attorney to

13   sabotage.

14          I have a motion for a new trial that I submitted in a

15   time that La Fonda Jones was off the case and in the time that

16   Mr. Smith had -- has come on.

17          The allegations of the motion to supplement the

18   motions on which you denied was the same allegations that I

19   placed inside this motion for new trial, which Mr. Smith did

20   not follow -- file on my behalf, which is showing ineffective

21   assistance of counsel.  I asked him to do that, and he says

22   that he would not do that.

23          Mr. Smith and I have a disagreement on the order that

24   you issued.  You issued an order that says 72 hours for a

25   motion to dismiss the counts or indictment.  I asked Mr. Smith

1    to file that on my behalf.  He said no.  I filed it on my own

2    behalf.  You struck that motion.

3         How am I supposed to have my due diligence exercised

4    when I can only speak through an attorney who I have a

5    continued conflict with?  These allegations that I bring forth,

6    they are with merit, they're not fraudulent, they're not

7    something that I'm misstating.  Under the penalty of perjury,

8    these allegations are true.  For us to be at this stage in this

9    game and for you to deny me any type of avenue to which to

10   address these issues again shows prejudice and bias towards

11   you.

12        I don't know, and I really don't care to know, why

13   that is, when your job and your duty was to honor these rules

14   and the United States Constitution.  You have not done that.

15   You have showed me that you are not fit to be part of my

16   proceedings.  Therefore, a mistrial is warranted for Chief

17   Judge Wiley Daniels violating Leon Henderson Askew's

18   constitutional rights and due process, equal protection.  In

19   the state of these proceedings, a private attorney needs to be

20   assigned to the defendant, the public defender and the CJA is

21   disqualified.  Chief Judge Wiley Daniels needs to be recused

22   for violating code of judicial conduct, partaking by false

23   arrest, false imprisonment, malicious abuse of process,

24   harassment, gross misconduct, negligence, violation of code of

25   judicial conduct and the Code of Professional Responsibility

1    for lawyers.

2           Courts need not tolerate abuse of discovery process.

3    A judge should take initiation of appropriate disciplinary

4    measures against a lawyer for unprofessional conduct which a

5    judge may become aware of.

6           You did none of this.  You allowed these attorneys,

7    especially the U.S. attorneys, to present fraudulent

8    information to the courts in the form of affidavits.  You have

9    reviewed those affidavits, and there is clear and convincing

10   evidence that the merit stands.  You have allowed La Fonda

11   Jones, upon your own account, to say that, Ms. Jones, you have

12   allowed the prosecution to ask misleading questions in all the

13   questions that you have asked.  I'm going to sustain your

14   objection, but I'm not going to tell you how to try the case.

15          That is your first accountability of ineffective

16   assistance of counsel.  When I filed that motion, you allowed

17   her to withdraw, which limited my collateral attack on how I

18   can attack in the future.  Therefore, you are no longer seeing

19   this case.

20          Pursuant to rules of judicial conduct and judicial

21   disciplinary proceedings, page 3, lines 31, 32, 36, 37, 34, 45,

22   46, 51, 52, 53, 54 -- strike 34 and add 44, you are to dismiss

23   this Indictment.  And since I am speaking with my own due

24   diligence, as my attorney has already previous said, there is

25   no way that he can address the Court, so that right there shows

1    that I have been on my own ever since.

2         For Government cannot knowingly use perjured testimony

3    to obtain a guilty verdict, *U.S. v. Rangel*.  If there is a

4    reasonable likelihood that the Government relied on perjured

5    testimony to obtain a guilty verdict, reversal is required,

6    *U.S. v. Crockett*.  These procedural defects would carry

7    automatic reversal on this conviction, *Illinois v. Somerville*.

8         I have this motion here.  This motion has not been

9    opened.  I sent it off to the Court in a time that Mr. Daniel,

10   Ms. La Fonda was making transitions.  Thank God this motion was

11   mailed to this courthouse, but I didn't have enough postage on

12   it.  It came back to me, so this motion is good.  I request for

13   one of the marshals to bring this motion to the Court so that

14   you can review it and see that my ineffective assistance of

15   counsel claim against my counsel here is the same reasons that

16   you denied the motion to supplement new trial.

17        So if I could have the deputies bring this to you,

18   Your Honor.

19        *THE COURT:*  No, we're not going to do that.  We don't

20   file pleadings by having U.S. Marshals deliver them to judges

21   in court.  I'll let you make your statement, but I deny your

22   request to have anything served on me as you've requested,

23   because the rules require that service occur in a different

24   manner.  So just like -- I apply the rules fairly and

25   impartially to everyone, and that applies with equal force to

1    you.  So whatever the rules are for filing, you'll have to

2    honor those.

3              So continue with your statement.

4              *THE DEFENDANT:*  Okay, Your Honor, you have just

5    stated -- I'm glad you said that.  You have just stated that

6    you honored the rules.  Your Honor, you did not honor the rules

7    to me.  You treated me like this was a modern-day slavery, as

8    if I was a dog.  The reason that I say that is because your

9    decision making towards me is not convincing.  If there is

10   something -- there is something wrong with this, and you have

11   to recuse yourself or reassign this case, Your Honor.  You

12   have -- you have done things as far as this stage of the

13   sentencing that is biased, prejudiced.

14             *THE COURT:*  All right.  Are you done?

15             *THE DEFENDANT:*  That's it.

16             *THE COURT:*  All right.

17             Is there anything else from anybody before the Court

18   proceeds to sentencing?

19             *MR. BOHN:*  Not by the United States, Your Honor.

20             *THE COURT:*  Mr. Smith.

21             *MR. SMITH:*  I have nothing further.

22             *THE DEFENDANT:*  Your Honor, I have one more thing.  I

23   just ask for you to recuse or reassign.  Would you address the

24   Court as if yes or no.

25             *THE COURT:*  Let me say this:  I will not respond to

1    anything you said because you have a right to make a statement,

2    and whatever you say, you say.  So I choose not to respond,

3    because I think that would be inappropriate.  And my silence

4    shouldn't be viewed as any indication that I agree with

5    anything you said, but you have a right to say what you said.

6    I'm exercising extreme restraint here, because that is the

7    better course of action.

8              Whatever I've done, it's been in a fair, unbiased,

9    and balanced way, it's been consistent with the law that I must

10   apply.  And the orders that I've entered speak for themselves,

11   so I will not attempt to respond to anything you've said.  And

12   I will continue to preside over this case because it's the

13   right, proper, and just thing to occur.  And that's all I'm

14   going to say.  We're going to proceed to sentencing.

15             *THE DEFENDANT:*  I object.

16             *THE COURT:*  You may object all you want, but we're

17   going to proceed to sentencing.

18             In the matter, then, of the United States of America

19   v. Leon Henderson Askew --

20             *THE DEFENDANT:*  I waive my right to be present.

21             *THE COURT:*  Neither -- well, he's still present, and

22   the marshals need to keep him in the courtroom.  You can't

23   leave the courtroom.  I would note for the record that

24   Mr. Askew is in the courtroom as I impose sentencing.

25             *THE DEFENDANT:*  I can waive my presence.

1          *THE COURT:*  Neither the Government nor the defendant

2    has filed any objections to the presentence report.  Therefore,

3    the factual statements and guideline applications in the report

4    are adopted without objection as the Court's findings of fact

5    concerning sentencing.

6          The Court finds that the Total Offense Level is 22 and

7    the defendant's Criminal History Category is IV, which results

8    in an imprisonment range of 63 to 78 months, Counts 1 through

9    3, and a fine range of 7,500 to $2 million.

10         The supervised release range is 1 to 3 years in Count

11   1, 3 to 5 years in Counts 2 and 3, and 2 to 5 years in Count 4.

12         The Court finds no reason to depart or vary from the

13   advisory sentencing range, which does not exceed 24 months, and

14   will impose a sentence within that advisory guideline range.

15         Pursuant to the Sentencing Reform Act of 1984, it is

16   the judgment of the Court that the defendant, Leon Henderson

17   Askew, is hereby committed to the custody of the Bureau of

18   Prisons to be imprisoned for a term of 70 months on each of

19   Counts 1, 2, and 3, to be served concurrently, and a term of 60

20   months on Count 4, to be served consecutively to the terms

21   imposed on Counts 1, 2, and 3, for a total term of 130 months.

22         Upon release from imprisonment, the defendant shall be

23   placed on supervised release for a term of 5 years.  His term

24   consists of terms of 3 years on each of Counts 1, 2, and 3 and

25   a term of 5 years on Count 4, also terms to run concurrently.

1    Within 72 hours of release from custody of the Bureau of

2    Prisons, the defendant shall report in person to the probation

3    office in the district to which the defendant is released.

4        While on supervised release, the defendant shall not

5    commit another federal, state, or local crime, shall not

6    possess a firearm as defined in 18 United States Code Section

7    921, and shall comply with the standards conditions that have

8    been adopted by the Court.  The defendant shall not unlawfully

9    possess a controlled substance.  The defendant shall refrain

10   from any unlawful use of a controlled substance.  The defendant

11   shall submit to one drug test within 15 days of release on

12   supervised release and two periodic tests thereafter.  The

13   defendant shall cooperate in the collection of DNA as directed

14   by the probation officer.

15       The Court finds that the following special condition

16   of supervision is determined to be reasonably related to the

17   factors enumerated in 18 United States Code Section 3553(a) and

18   18 United States Code Section 3583(d).  Further, based on the

19   nature and circumstances of the offense and the history and

20   characteristics of this particular defendant, the following

21   conditions do not constitute a greater deprivation of liberty

22   than reasonably necessary to accomplish the goals of

23   sentencing.

24       No. 1, the defendant shall participate in and

25   successfully complete a program of testing and/or treatment for

substance abuse as approved by the probation officer until such

time as the defendant is released from the program by the

probation officer.  The defendant shall abstain from the use of

alcohol or other intoxicants during the course of treatment and

shall pay the costs of treatment as directed by the probation

officer.  The defendant shall pay a special assessment of $400.

The Court finds the defendant lacks the ability to pay a fine,

so the Court waives a fine in this case.  Having assessed the

defendant's ability to pay, it is ordered that the total

monetary obligation will be paid immediately.

Mr. Askew, while you're in the courtroom, and I want

the record to reflect you are in the courtroom, you are advised

of your right to appeal the underlying conviction and the

sentence which I have just imposed.  If you desire to appeal,

you, as the defendant, must file a Notice of Appeal with the

Clerk of the Court within 14 days after the entry of judgment

or your right to appeal will be lost.  If you are unable to

afford an attorney for an appeal, the Court will appoint one to

represent you.  If you so request, the Clerk of the Court must

immediately prepare and file a Notice of Appeal on your behalf.

I would note that the defendant is in the courtroom,

and he is remanded to the custody of the United States Marshal.

And consistent with the way this court does procedures, I will

enter a written judgment, once it's presented to me, that will

memorialize the sentence which the Court has imposed today.

1           We'll be in recess.

2           MR. SMITH:  Your Honor --

3           THE COURT:  Hold on.

4           Yes, Mr. Smith.

5           MR. SMITH:  While you were pronouncing the sentence, I

6    understood my client, Mr. Askew, to instruct me not to file a

7    Notice of Appeal.

8           Is that correct, sir?

9           THE DEFENDANT:  Correct.

10          MR. SMITH:  I just want that on the record, Your

11   Honor.

12          THE COURT:  All right.  Well, it's -- you've said what

13   you had to say.  I express no opinion about any of that.

14          All right.

15          (Recess at 9:50 a.m.)

16                      REPORTER'S CERTIFICATE

17

18       I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
19

20       Dated at Denver, Colorado, this 26th day of June, 2012.

21                                      s/Therese Lindblom

22                              _____

23                              Therese Lindblom,CSR,RMR,CRR

24

25